KUINISE MOEA'I, Plaintiff

v.

FONOTI (PATRICK) REID dba PACIFIC
EQUIPMENT & EARTHMOVING Co., Defendant

High Court of American Samoa
Trial Division

CA No. 59-88

November 21, 1988

Before KRUSE, Associate Justice, TAUANU'U, Chief
Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiff, Togiola T.A. Tulafono
         For Defendant, Frank Swett

Defendant acquired a government road construction contract in Manu'a and hired plaintiff as a truck driver at the wage of $5.00 per hour.

Plaintiff now sues the defendant for unpaid wages, claiming that he never received a pay check throughout his period of employment. In addition, plaintiff contends that defendant's failure to pay was "wilful" and therefore also seeks "liquidated damages" in an amount equal to his claim for unpaid wages pursuant to A.S.C.A. section 32.0340.

Defendant does not dispute owing plaintiff back wages. He does contest the amount of plaintiff's claim to actual hours worked as being inflated. He further denies wilfulness in non-payment of wages, claiming that an ongoing dispute on the road contract with the government has caused his venture to lose money and not fulfill expectations. He expects to satisfy his obligations to plaintiff after the government releases to him some $28,000 in retentions. Defendant also claims to have made plaintiff cash advances at various times totalling some $590.00.

Plaintiff calculates his wages due as being in the amount of $5,765, of which the sum of $1,650 is said to be overtime compensation. Defendant's figures, however, show plaintiff as being owed $1,876.50, which figure has taken into account the alleged cash advances.

Plaintiff testified that he was hired by defendant to commence work on May 11, 1987 and was immediately put to work hauling material. He testified that a few days afterward, on May 15, 1987, he was relocated to Manu'a with defendant's equipment. He largely remained in Manu'a until October 2, 1987 when employment ceased.

Evidence of work hours submitted by plaintiff was in the form of a 1987 calendar upon which plaintiff made notations for each day of the week. In these notations he has set down hours, which he claims were time at work, as well as a short log of his activities and location for that day. Plaintiff claims that he has kept a calendar of his work activities as he has always done when

employed by local contractors. From experience he does not trust them.

Upon close review of this diary however, we are unable to avoid agreeing to some extent with defendant that plaintiff has inflated his actual work hours with certain entries in his calendar.

The bulk of the entries in plaintiff's calendar attempt to give a time of commencement and a time for cessation of work each day. Additionally plaintiff has also briefly noted the activity and job site of the particular day. But then there are also a number of entries which have been obviously revised with a different colored pen as an afterthought. There are also a number of entries which appear to lack any contemporaneity with work activity. They simply appear as a day's total of hours without the usual information on starting time, activity, and quitting time. For instance, in the month of July plaintiff has credited himself with the simple notation "8 HRS" all down the Sunday column without further explanation. These entries were all made with the same pen at the same moment, while the notations for the ensuing usual work weeks of the month are in another kind ink and include work detail. There are days when the regular entry appears as "no work" made with one pen and then with a different pen, plaintiff would credit himself "8 HRS". There are times when plaintiff has noted that he is on Tutuila and has assigned himself regular and overtime hours of "work in the office." What a truck driver, who is being paid by the hour, does in the office is unclear to us, although defendant testified that plaintiff was in the habit of disappearing from Manu'a without anyone knowing about it until he again returned.

On the other hand, the credibility of defendant's proofs left us even more uncertain. Defendant submitted a summary of plaintiff's time sheets purportedly extracted from the regular time keeper's records. A perusal of the timekeeper's records revealed immediately that defendant's summary ignored the timekeeper's records for the month of May, while the timekeeper's records themselves for the first week of work proved mathematically startling. A resulting equation: 8 daily hours x 5 days = 16 work hours.

Furthermore, and mindful of plaintiff's exaggerated record of his hours, the difference between the timekeeper's log of hours and that of plaintiff's was simply too great to permit us to conclude favorably on the reliability of the timekeeper's records. When defendant attempted to explain the discrepancy, he defensively offered that it was the particular employee's duty to reconcile hours with the timekeeper if the employee felt there was indeed a discrepancy. Defendant put this down to "normal business practice."

After nearly five months of employment with nothing but a recurring promise of compensation, the need to reconcile hours will not have arisen as the employee would not know what hours are being paid by the employer. This is the kind of information employees are regularly given on their payroll checks or wage statements. Further, plaintiff testified that there was no established daily practice whereby they reported to a timekeeper or punch clock, and thus we assume that the possibility of reconciling hours was not at all encouraged in practice.

In our judgment, the evidence preponderates in favor of those regularly kept entries of plaintiff which are free of the criticism we noted above. We find plaintiff was employed by defendant from May 11, 1987 to October 2, 1987. During that period of employment plaintiff had accumulated the following unpaid number of work hours:

```
Regular  Hours:   625    x $5.00 = $3125.00
Overtime Hours:   115    x $7.50 = $ 862.50
Total Wages    :                  = $3987.50.
```

We next reach the question of "liquidated damages." Plaintiff seeks to recover double the amount of unpaid wages, basing his cause of action on the provisions of A.S.C.A. section 32.0340. This enactment provides, inter alia, for punitive damages against an employer who "wilfully" violates the provisions of sections 32.0320 and 32.0323. Such damages shall be for an additional equal amount of unpaid compensation due the employee in accordance with the said sections 32.0320 and 32.0323. The former section provides for payment of minimum wages at the rate of 70 cents an hour; however, the enactment by its terms does not apply to employees covered by the Merit System Law and Federal Minimum Wage Schedule established by the

51

United States Department of Labor.[1] The latter section provides for overtime rates being payable to an employee after having worked 40 hours in a given week.

There appear to be two aspects of a claim under section 32.0340. These are: damages for wilful failure to pay minimum rates of 70 cents an hour; and damages for wilful failure to pay overtime rates.

On the first aspect, a claim for liquidated damages sought by plaintiff based on his contractual rate of $5.00 per hour is not available under section 32.0340. The enactment addresses a claim for damages based on the difference between the hourly rate paid by the employer and 70 cents an hour; it does not address a breach of contract situation. Furthermore, the language of section 32.0320 makes it doubtful that the punitive measure provided under section 32.0340 is available for wilful failure to pay minimum wages in circumstances where the federal minimum wage schedule is applicable.[2]

On the evidence before us, there was no attempt by plaintiff to show that his employment

---

[1] The Fair Labor Standards Act, 29 U.S.C. §§ 201-19, commonly known as the Wage and Hour Law, contains particular provisions applicable to American Samoa. 29 U.S.C. § 206(a)(3) requires the Wage and Hour Administrator to appoint a special industry committee to recommend to the Secretary of Labor the minimum wages to be paid in American Samoa. As a result, wage rates have been established for numerous industries in the territory. See 29 C.F.R. § 697.1 (1984).

[2] Save for those specific exemptions provided in the Fair Labor Standards Act, 29 U.S.C. § 213, the circumstances of employment to which the federal wage schedule appears intended for application are right across the board. See 29 C.F.R. § 697.1(n) (1984). This regulation establishes an industry classification in the territory known as "Miscellaneous activities industry" and which is defined as including "every activity not included in any other industry defined herein."

circumstances were other than those covered by the federal wage schedule. 29 C.F.R. section 697.1 (e) establishes a "Construction industry" which is defined to include all "construction, reconstruction, structural renovation and demolition, on public or private account, of buildings, housing, highways and streets, catchments, dams, and any other structure." 29 C.F.R. § 697.1(e)(2) (1988). Without any showing to the contrary, this classification would seem to cover the factual circumstances of employment before the Court, and accordingly plaintiff's claim is outside the ambit of section 32.0320.

The second aspect of the claim is damages for wilful failure to pay overtime rates which are set by section 32.0323 at one and one-half times the employee's ordinary rate of pay --- whether that rate is contractually determined or not. However, relief hereunder does not merely arise with non payment of overtime rates. The employer's failure to pay must be "wilful." In this regard, defendant testified that he has been unable to pay his employees because of early disputes arising with the government on the roading contract. This involved money consuming work changes from which defendant claims he never recovered and eventually resulted in a mutual agreement to terminate the contract. The defendant's pleadings admit liability for the payment of overtime rates, although he has contested the number of hours claimed by plaintiff. In the light of our conclusions above, that objection by defendant has not proven to be without merit. Moreover, plaintiff has not produced evidence to contradict defendant's asserted inability to pay.

We conclude against wilfulness on the part of defendant.

With regard to the alleged advances by defendant to plaintiff, we find that defendant has made an insufficient showing. When asked by the Court if defendant kept documentary recordings of such advances, defendant mentioned a certain book kept by his partner in the venture. This reported record was ordered to be produced by defendant and our review of the same failed to sustain defendant's testimony. We disallow the claimed offset.

53

Finally, this matter was originally set for trial on October 24, 1988 but continued at that time over the objection of counsel for plaintiff. The matter was continued as defendant was off island; however, defendant has stipulated in open court to pay for plaintiff's costs and attorney's fees incurred as a result of the continuance. Such costs and attorney's fees are allowed. Plaintiff's attorney shall submit a statement to that effect for the Court's approval.

On the foregoing, judgment will enter in favor of plaintiff in the amount of $3987.50, plus all costs of suit, attorney's fees only as above allowed, and all lawful interest.

It is so Ordered.